## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| BRITTANY S. PHILLIPS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:16-cv-00737-JEO |
| | ) | |
| GESTAMP ALABAMA, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

The court has before it the October 13, 2017 motion for summary judgment filed by Defendant Gestamp Alabama, LLC ("Gestamp"). (Doc. 39). Pursuant to the court's initial order (Doc. 18), the motion was under submission as of November 14, 2017. After consideration of the briefs and evidence,[2] the motion is due to be granted for the following reasons.

## I.    STATEMENT OF FACTS

Gestamp manufactures automotive parts and components at its facility in McCalla, Alabama. (Doc. 41-6 ("Wells Decl.") ¶ 3). Plaintiff began her employment with Gestamp as a production associate on March 14, 2011. (*Id.* ¶ 12;

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 17).

[2] Defendant filed Plaintiff's deposition and exhibits, as well as two affidavits, in support of summary judgment. (Doc. 41). Plaintiff is *pro se* and did not file any evidence to support her opposition to summary judgment. The court liberally reads the unsworn statements in Plaintiff's brief in opposition to summary judgment as if they were included in an affidavit.

Doc. 41-1 ("Phillips Dep.") at 35). Plaintiff worked for several years in different positions, and, on April 1, 2013, she was promoted to the ultrasonic technician position. (*Id*. at 50, 58; Doc. 41-2 at 68-69, 75). Ultrasonic technicians check and ensure the integrity of welds on automotive parts manufactured by Gestamp before the parts are shipped to customers. (Doc. 41-21 ("Landry Decl.") ¶ 3). Plaintiff was the first female promoted to this position. (Doc. 5 ¶ 9).

Hourly employees such as Plaintiff are paid in accordance with a pay scale applicable to their position. (Wells Decl. ¶ 11). The entry level pay rate for an ultrasonic technician is $14.00 per hour. (*Id*. ¶ 11a). Employees transferred or promoted to an ultrasonic technician position receive a raise at least to the minimum pay rate for the position. (*Id*. ¶ 11b). With her promotion to ultrasonic technician, Plaintiff received a $0.75 raise from $14.25 to $15.00 per hour.[3] (*Id*. ¶ 13; Phillips Dep. at 35, 58; Doc. 41-2 at 75).

All employees receive hourly wage increases every six months in accordance with the pay scale applicable to their position and based on their length of time working in the position. (Wells Decl. ¶ 11e). Additionally, Gestamp adjusts the pay scales upward for all employees to account for market wage rate

---

[3] Plaintiff contends she was discriminated against when she received a $0.75 hourly raise at the time she was promoted in April 2013. She contends some male associates received a $1.00 raise when they became ultrasonic technicians. (Doc. 42 ¶ 22). She also contends it took her longer to reach her maximum pay level than some male ultrasonic technicians, but admitted this was because she worked in positions at a lower scale before she became an ultrasonic technician. (Phillips Dep. at 189-92).

increases, cost of living, and inflation. (*Id*. ¶ 11f). When adjustments to the pay scale are made, all employees in particular positions receive a corresponding hourly pay raise. (*Id*.).

As an ultrasonic technician, Plaintiff first worked on the second shift and Warren Landry was her supervisor or group leader. (Phillips Dep. at 37, 66-67; Landry Decl. ¶ 8). Beginning in October 2013, Plaintiff contends Landry harassed her regarding her work progress, paper left at her work station, and restroom breaks. (Doc. 42 ¶ 16). Specifically, during Plaintiff's first week in zone 3, a particularly difficult area, Landry repeatedly came to her work station throughout the night and demanded to know her progress. (*Id*. ¶ 17; Phillips Dep. at 179-80). Landry used a hostile tone when speaking with Plaintiff. (Doc. 42 ¶ 16). Landry began to record the time on Plaintiff's work log to show her progress, or lack thereof, throughout her shift. (*Id*.; Phillips Dep. at 179-80).

Additionally, Landry questioned Plaintiff regarding her workstation. Plaintiff testified she left work related documents neatly under her computer at her workstation. (Doc. 42 ¶ 17; Phillips Dep. at 182). Landry made her write an essay explaining why she left documents at her workstation. (*Id*.). He also instructed the day shift team leader to search Plaintiff's workstation in the morning to see if Plaintiff left anything behind. (*Id*.). In contrast, Plaintiff contends male ultrasonic technicians left trash, candy wrappers, and soda bottles at their workstations

without any repercussions. (*Id.*). There is no evidence Plaintiff was ever disciplined for leaving paper at her workstation.

Finally, Plaintiff contends Landry harassed her about the length of restroom breaks. (Doc. 5 ¶¶ 10-11). In October 2013, Plaintiff received a written warning for leaving her work station for thirty-eight (38) minutes on October 9, 2013, and thirty-one (31) minutes on October 10, 2013.[4] (Doc. 41-22 at 4). Plaintiff did not inform anyone she was leaving her workstation and when questioned, stated the long breaks were necessary because she had undergone surgery less than a year beforehand and needed to take longer restroom breaks. (*Id.*). The warning stated Plaintiff's performance was slower than her peers and well-below the required amount of testing. (*Id.*). Plaintiff did not comment on her performance, but stated she would try to take shorter, more frequent restroom breaks. (*Id.*). There is no evidence Plaintiff asked for an accommodation regarding her restroom breaks.

Plaintiff also contends Landry treated males more favorably with respect to overtime assignments. (Doc. 5 ¶¶ 12-14). The Associate Handbook contains Gestamp's policy for scheduling overtime. (Doc. 41-8). The policy states volunteers for overtime will be asked on a rotating basis when an entire shift is not required to work overtime. (Wells Decl. ¶ 10; Doc. 41-8 at 23). Further "[w]hen production requirements exceed the number of those volunteering to work, the

---

[4] Although acknowledging she took long breaks, Plaintiff disagreed with the amount of time listed in the warning. (Doc. 41-22 at 4).

Group Leader [has] the flexibility to determine the process by which overtime will be distributed." (Doc. 41-8 at 3). If volunteers are not found, employees may be required to work based on "length of service and skills." (*Id.*).

Plaintiff contends Landry temporarily changed the way he assigned overtime hours to prevent her from being offered overtime first. Specifically, she argues when she was not the most senior ultrasonic technician, Landry offered overtime to the most senior employee first. (Doc. 42 ¶ 21). Near the end of 2013, the most senior ultrasonic technician regularly turned down overtime and Plaintiff was "next in line to receive overtime assignments." (*Id.*). The team leader, David Ward, informed Plaintiff, however, Landry changed the overtime assignment and was going to assign overtime evenly among the ultrasonic technicians. (*Id.*). According to Plaintiff, Landry changed the overtime assignment policy back to seniority when Bryant Swan joined the second shift and became the most senior ultrasonic technician. (*Id.*).

In July 2014, Plaintiff began having more problems with Landry. On July 10, 2014, Landry spoke with Plaintiff regarding her failure to complete quality checks on a sufficient number of parts during her shift. (Landry Decl. ¶ 11). Landry required Plaintiff to write a statement discussing how she spent her time during her shift that day. (*Id.*). Plaintiff wrote a short statement and argued with Landry regarding her performance. (*Id.*). Landry instructed Phillips to clock out

for the remainder of her shift and required her to perform alternative duties in the Quality Department for a few days when she returned. (*Id.*).

On July 24, 2014, group leader Alcendo Robinson approached Plaintiff and asked her to check the welds on a certain part. (*Id.* ¶ 12; Doc. 41-25 at 2). She told him she would check it, but continued work on another part. (*Id.*). Robinson told her he needed the quality check performed immediately because the part at issue was still being built and could not continue until the check was performed. (Doc. 41-25 at 2). Plaintiff responded she would do it "in a little while." (*Id.*). Robinson contacted team leader David Ward and informed him Plaintiff refused to do a quality check as requested. (*Id.* at 3). Ward then asked Plaintiff to stop what she was doing and perform the check and she again refused. (*Id.*)

At this point, Robinson and Ward informed Landry that Plaintiff refused to perform a quality check as instructed. (Landry Decl. ¶ 12). Ward and Landry immediately met with Plaintiff regarding her denial of the request made by two of her supervisors. (*Id.*). Landry asked Plaintiff to write a statement regarding the incident. (*Id.*). Plaintiff wrote: "I have done things the way I thought they were to be done and I've gotten in trouble. I've done them the way Warren Landry has told me to and I've still gotten in trouble. I just don't know what to do anymore." (Doc. 41-23 at 2). Landry asked Plaintiff to clock out for the remainder of her shift. (Landry Decl. ¶ 12). She refused and Landry told Plaintiff she would be

transferred from the second shift to the first shift. (*Id*.). The next day, July 25, 2014, Plaintiff transferred to the first shift and has not been supervised by Landry since that date. (Phillips Dep. at 37, 66-67). Plaintiff remains employed at Gestamp as an ultrasonic technician. (Phillips Dep. at 28, 59-60; Wells Decl. ¶ 12.c). She is paid the maximum amount under the pay scale for her position. (*See* Phillips Dep. at 188-92).

On January 18, 2015, Plaintiff completed an Equal Employment Opportunity Commission ("EEOC") intake questionnaire. (Doc. 41-5 at 1-4). On January 26, 2015, the EEOC mailed a Notice of Charge of Discrimination to Gestamp stating "a charge of employment discrimination has been filed against your organization under" Title VII based on race, color[5] and sex. (*Id*. at 5). The Notice lists the issues as assignment, discipline, harassment and terms/conditions and notes the dates as January 1, 2015 through January 15, 2015. (*Id*.). On the Notice provided to Gestamp, in the "Enclosure(s)" section, the "Copy of Charge" box is left unchecked. (*Id.*). The Notice states "[a] perfected charge . . . will be mailed to you once it has been received from the Charging Party." (*Id*.). The charge of discrimination was signed and perfected by Plaintiff on May 26, 2015. (*Id*. at 6). On February 5, 2016, the EEOC dismissed Plaintiff's charge and notified her of

---

[5] Plaintiff admitted in her deposition her claims are only related to gender. (Phillips Dep. at 196).

her right to sue. (*Id*. at 20). Plaintiff timely filed her complaint on May 5, 2016.[6] (Doc. 1).

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *See id.* at 324.

The substantive law identifies which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). All

_____

[6] Plaintiff contends Gestamp refused to promote her to new positions and refused to interview her for certain positions in retaliation for filing an EEOC charge and lawsuit. (Doc. 42 ¶ 23). This claim is due to be dismissed because Plaintiff did not amend her EEOC charge to include these allegations, and they are not related to or grow out of the allegations contained in her charge. *See Gregory v. Ga. Dep't of Human Resources*, 355 F.3d 1277, 1280 (11th Cir. 2004). Plaintiff cannot raise allegations of new acts of discrimination in her complaint. *See Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989).

reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

## III. DISCUSSION

The court liberally interprets Plaintiff's *pro se* Amended Complaint to state the following claims: (1) gender discrimination in violation of Title VII; (2) hostile work environment in violation of Title VII; and (3) a violation of the Equal Pay Act. (Doc. 5 at 2-8). After careful review and for the reasons stated below, the court concludes there are no material issues of fact and Defendant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56.

### A. Title VII Discrimination Claims

Defendant contends Plaintiff's Title VII claims are due to be dismissed because she failed to timely exhaust her administrative remedies. (Doc. 40 at 14-16). In her opposition, Plaintiff does not address Defendant's argument regarding the failure to exhaust administrative remedies. (Doc. 42). Instead, Plaintiff focuses on the merits of her claims. (*Id.*).

## 1. Exhaustion of Administrative Remedies

Before a plaintiff may pursue a Title VII discrimination claim, she first must exhaust her administrative remedies. *Wilkerson v. Grinnell Corp*., 270 F.3d 1314, 1317 (11th Cir. 2001). To exhaust her administrative remedies, a plaintiff must file a timely charge of discrimination with the EEOC. *Id.* (citing 42 U.S.C. § 2000e–5(b)). To be timely within a non-deferral state, such as Alabama, the charge must be filed within 180 days of the last discriminatory act. 42 U.S.C. § 2000e–5(e)(1); *H & R Block E. Enters. v. Morris*, 606 F.3d 1285, 1295 (11th Cir. 2010) (citing *Wilkerson*, 270 F.3d at 1317). A charge can be made either in person or by mail, and it must be in writing, signed and verified. 29 C.F.R. §§ 1601.8–.9 (2011). For a charge to be verified, it must be "sworn to or affirmed before a notary public, designated representative of the Commission, or other person duly authorized by law to administer oaths and take acknowledgements, or supported by an unsworn declaration in writing under penalty of perjury." *Id*. § 1601.3(a).

When making a charge to the EEOC, a person must include the (1) "full name, address and telephone number of the person making the charge," (2) "full name and address of the person against whom the charge is made," (3) a clear and concise statement of facts that comprise the alleged unlawful employment practices, (4) the approximate number of the employer's employees (if known), and (5) "whether proceedings involving the alleged unlawful employment practice

have been commenced before a State or local agency charged with the enforcement of fair employment practice laws." *Id*. § 1601.12(a)(1)-(5). However, under § 1601.12(b), a writing can be considered "sufficient," and therefore a charge, when a person makes a statement "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." *Id*. § 1601.12(b). Further, a person can be allowed to amend "technical defects or omissions" within a charge, such as failing to verify the charge, or "to clarify or amplify allegations" made in the charge. *Id*. These amendments will "relate back to the date the charge was first received." *Id*.

Here, Plaintiff completed an EEOC intake questionnaire on January 18, 2015. (Doc. 41-5 at 1- 4). The intake questionnaire was signed by Plaintiff but not verified. (*Id*. at 4). The instructions for filling out the questionnaire state: "REMEMBER, a charge of employment discrimination must be filed within the time limited imposed by law." (*Id*. at 1). On the last page, the intake questionnaire instructed Plaintiff as follows:

> [C]heck one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire. If you would like to file a charge of job discrimination, you must do so . . . within 180 days from the day you knew about the discrimination . . . . If you do not file a charge of discrimination within the time limits, you will lose your rights. . . . If you want to file a charge, you should check Box 2.

(*Id*.).   Plaintiff checked box 2, indicating her desire to "file a charge of discrimination" and "authoriz[ing] the EEOC to look into the discrimination [she] described above."  (*Id*.).  Plaintiff did not file a verified charge until May 26, 2015. (*Id*. at 6).

The vast majority of Plaintiff's allegations of discrimination, including the alleged harassment, discipline for restroom breaks, and discriminatory pay raise occurred in late 2013.   There is no evidence of the timing of the alleged discriminatory overtime assignments, but from what the court can glean from the record, they occurred in early 2014.  The last discriminatory act alleged by Plaintiff occurred on July 24, 2014, when Landry disciplined her for her refusal to conduct the quality check when asked by two supervisors and she was transferred to first shift the next day.

The question for the court is whether this intake questionnaire can be considered a charge under Eleventh Circuit precedent.  Before the court reaches this question, however, the court notes it is undisputed the vast majority of Plaintiff's alleged discrete acts of discrimination contained in the intake questionnaire are untimely.   They occurred in late 2013 and early 2014, well beyond the 180 day limit.  Even if the intake questionnaire was considered a charge, they would clearly be time barred.  *See H & R Block E. Enters*., 606 F.3d at 1295;  *Milazzo v. Title Cash of Huntsville*, 2012 WL 5263584, at *2 (N.D. Ala.

2012) (EEOC charge filed 5 days after the 180 day deadline was untimely and barred plaintiff's Title VII and ADEA claims).

The only potentially timely claim is Plaintiff's July 24, 2015 discipline and transfer to the first shift. Plaintiff's intake questionnaire was filed 178 days after this alleged discriminatory act. That claim can only be timely, however, if the intake questionnaire is considered a charge under Title VII.

Although the Eleventh Circuit has "never directly addressed the effect of an in intake questionnaire for exhaustion purposes," the Court has "considered the interrelationship between the EEOC charge and an intake questionnaire several times when assessing whether a charge has been timely filed." *Francois v. Miami Dade County*, 432 F. App'x 819, 821 (11th Cir. 2011). For example, in *Wilkerson v. Grinnell Corp.*, the Eleventh Circuit held an intake questionnaire could be considered a charge if it: (1) was verified; (2) contained the basic information required by a charge under 29 C.F.R. § 1601.124; and (3) the form's language could reasonably have been interpreted to represent a charge. 270 F.3d at 1320-21.

That being said, "as a general matter an intake questionnaire is not intended to function as a charge," *Pijnenburg v. West Georgia Health Sys., Inc.*, 255 F.3d 1304, 1305 (11th Cir. 2001), and as such, the Eleventh Circuit does "not treat intake questionnaires willy-nilly as charges." *Wilkerson*, 270 F.3d at 1320. In *Pijnenburg*, the Eleventh Circuit "held the plaintiff's unverified intake

questionnaire did not satisfy Title VII's timely filing requirement, as it did not notify her employer of her claim or initiate the EEOC investigation." *Francois*, 432 F. App'x at 822 (citing *Pijnenburg*, 255 F.3d at 1306). In *Bost v. Federal Express Corp.*, the Eleventh Circuit similarly held a plaintiff's intake questionnaire, filed along with an affidavit, did not satisfy the requirements of a timely charge. 372 F.3d at 1241. The circumstances in *Bost* did not support a conclusion the questionnaire satisfied the timely filing requirement because the plaintiff clearly understood the intake questionnaire was not a charge since he later filed a timely charge, the EEOC did not initiate its investigation until after the plaintiff filed his charge, and the questionnaire form itself did not suggest it was a charge. *Id.*

For the same reasons, the court finds the circumstances of this case do not support a finding that Plaintiff's intake questionnaire is a charge of discrimination. First, it is undisputed the intake questionnaire was not verified.[7] Second, the intake questionnaire clearly stated in at least two places that Plaintiff must file a charge of discrimination within the applicable time limits, thus indicating the intake questionnaire was not in and of itself a charge. Third, the fact that Plaintiff

---

[7] Plaintiff filed a verified charge of discrimination on May 26, 2015, detailing some of her alleged discrimination, including the late July discipline. (Doc. 41-5 at 6). While EEOC regulations permit amendments to charges to cure technical defects or omissions and allow those amendments to relate back to the date the charge was first received, 29 C.F.R. § 1601.12(b), these regulations do not help Plaintiff. Because the intake questionnaire is not a charge in the first instance, the May 2015 charge does not cure the verification defect.

eventually did file a charge of discrimination suggests she did not intend her intake questionnaire to function as a charge. Finally, there is no evidence Defendant received the intake questionnaire or was on notice of Plaintiff's questionnaire, or that the EEOC investigated the claim. Because the intake questionnaire cannot be considered a charge of discrimination, and the actual charge was filed well beyond the 180 days, Plaintiff's Title VII claims are barred. Defendant's motion for summary judgment is due to be granted as to all of Plaintiff's claims under Title VII.

## 2. Disparate Treatment Claim

In the alternative, even if the court considered her intake questionnaire a charge of discrimination, and, therefore timely as it relates to the July 2014 discipline, Plaintiff's claim fails as a matter of law. A Title VII disparate treatment claim based on circumstantial evidence, as the one presented here, is analyzed under the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004). To establish a prima facie case of disparate treatment, the plaintiff must show: (1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated employees outside his class more favorably; and (4) she was qualified to do the job. *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999). After a prima facie case is established, the employer

has the burden to articulate a legitimate, nondiscriminatory reason for the employment decision. *Wilson*, 376 F.3d at 1087. This burden involves no credibility determination, *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509, (1993), and has been characterized as "exceedingly light." *Perryman v. Johnson Prod. Co*., 698 F.2d 1138, 1141 (11th Cir. 1983). As long as the employer articulates "a clear and reasonably specific" non-discriminatory basis for its actions, it has discharged its burden of production. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254–55 (1981). After an employer articulates one or more legitimate, non-discriminatory reasons for the employment action, the plaintiff must show the proffered reason was a pretext for illegal discrimination. *Id*. If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must "meet that reason head on and rebut it." *Chapman v. AI Transp.,* 229 F.3d 1012, 1030 (11th Cir. 2000).

Plaintiff cannot establish a prima facie case of discrimination regarding her January 24, 2014 discipline and transfer because there is no evidence it was an adverse employment action. An adverse employment action is an essential element of a claim of discrimination. *Davis v. Town of Lake Park*, 245 F.3d 1232, 1238 (11th Cir. 2001). "[T]o prove [an] adverse employment action . . . an employee must show a serious and material change in the terms, conditions, or privileges of employment." *Id*. at 1239; *Howard v. Walgreen Co*., 605 F.3d 1239,

1245 (11th Cir. 2010). "[T]he employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Howard*, 605 F.3d at 1245. Therefore, plaintiff must "establish an 'ultimate employment decision' or make some other showing of substantiality in the employment context in order to establish an adverse employment action." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (citations omitted).

An "ultimate employment decision" is one "such as termination, failure to hire, or demotion." *Id*. For a decision "falling short of an ultimate employment decision" to rise to the level of an actionable adverse employment, that decision "must, in some substantial way, alter the employee's compensation, terms, conditions, or privileges of employment, deprive him or her of employment opportunities, or adversely affect his or her status as an employee." *Id*. (internal quotations and citation)). Among the facts and circumstances affecting whether a decision is considered "adverse" are whether the decision results in "lesser pay, responsibilities or prestige," and whether the decision would "impede an employee's professional growth or advancement." *Doe v. DeKalb County School District*, 145 F.3d 1441, 1452 (11th Cir. 1998). "Although proof of direct economic consequences is not required in all cases, the asserted impact 'cannot be speculative and must at least have a tangible adverse effect on the plaintiff's

employment.'" *Soloski v. Adams*, 600 F. Supp. 2d 1276, 1356 (N.D. Ga. 2009) (quoting *Filius v. Potter*, 176 F. App'x. 8, 10 (11th Cir. 2006)). "While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action. Otherwise, minor and even trivial employment actions that 'an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.'" Davis, 245 F.3d at 1242) (quoting *Smart v. Ball State University*, 89 F.3d 437, 441 (7th Cir. 1996)).

Here, there is no evidence the July 24, 2015 discipline and transfer was an adverse employment action. The discipline was unaccompanied by a reduction in pay,[8] suspension, demotion, or termination. In fact, there is no evidence the discipline negatively affected Plaintiff at all. Instead, the evidence suggests she has been much happier since she transferred from the second shift and away from Landry in that all alleged harassment and discrimination ended. Because the terms, conditions, or privileges of her employment were not affected, the court concludes Plaintiff failed to present any evidence of an adverse employment action. As such, Defendant is entitled to summary judgment on her Title VII claim for this alternative reason.

---

[8] Landry forced Plaintiff to leave her shift early that day, but there is no evidence regarding any cut in her pay regarding this early dismissal.

## B. Equal Pay Act Claim

Defendant contends Plaintiff's claim under the Equal Pay Act ("EPA") is due to be dismissed because Plaintiff cannot establish a prima facie case. (Doc. 40 at 29). Defendant argues Plaintiff cannot identify a comparator of equal skill, effort, and responsibility who was paid more than she was paid. (*Id*.). In the alternative, even if Plaintiff could establish a prima facie case, Defendant asserts Plaintiff's claim fails because any pay differential was based on factors other than sex. (*Id*. at 29-30). Plaintiff does not make any argument in support of her EPA claim.[9] (Doc. 42).

"Where a non-moving party fails to address a particular claim asserted in the summary judgment motion but has responded to other claims made by the movant, the district court may properly consider the non-movant's default as intentional and therefore consider the claim abandoned." *See Powell v. Am. Remediation & Envtl., Inc*., 61 F. Supp. 3d 1244, 1252, n.9 (S.D. Ala. 2014). Simply put, a party must defend a claim targeted by a summary judgment motion or the court will conclude the party abandoned that claim. *See Wilkerson*, 270 F.3d at 1322 (finding claim abandoned, and affirming grant of summary judgment, as to claim presented in complaint but not raised in initial response to motion for summary judgment); *Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*,

---

[9] Instead, Plaintiff's opposition focuses on her wage discrimination claim under Title VII. (Doc. 42 ¶¶ 9, 22).

219 F.3d 1301, 1325 (11th Cir. 2000); *see also Resolution Trust Corp. v. Dunmar Corp*., 43 F.3d 587, 599 (11th Cir. 1995) ("In opposing a motion for summary judgment, 'a party may not rely on his pleadings to avoid judgment against him.' There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."). Because Plaintiff did not respond to Defendant's arguments regarding her EPA claim, the court concludes Plaintiff abandoned the claim, and Defendant is entitled to summary judgment as to the EPA claim.

Even if the court were to consider the merits of Plaintiff's EPA claim, Defendant would nonetheless be entitled to summary judgment. The EPA requires a plaintiff to show "that the employer paid employees of opposite genders different wages for equal work for jobs which require 'equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Steger v. Gen. Elec. Co*., 318 F.3d 1066, 1077-78 (11th Cir. 2003) (quoting *Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir. 1995)). If she establishes a prima facie case, the defendant may avoid liability by proving the pay differences are based on one of the EPA's four exceptions: "'(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) . . . any other factor

other than sex.'"  *Id*. at 1078 (quoting 29 U.S.C. § 206(d)(1)).  If the defendant meets this burden, the plaintiff "must rebut the explanation by showing with affirmative evidence that it is pretextual or offered as a post-event justification for a gender-based differential." *Id*. (internal quotation marks omitted).

Here, Plaintiff failed to identify any suitable comparator paid more than she was paid.  The evidence shows instead that Plaintiff's hourly rate was higher than males employed in the same ultrasonic technician position.  (Wells Decl. ¶ 14; Doc. 41-15; Doc. 41-16).  Additionally, as for any male ultrasonic technician who was paid more than Plaintiff, there is no evidence that differential was based on sex.  Instead, the evidence shows all ultrasonic technicians were paid in accordance with the appropriate pay scale, seniority and tenure.  *See Irby*, 44 F.3d at 956; *Glenn v. General Motors Corp.,* 841 F.2d 1567, 1571 (11th Cir. 1988).  Plaintiff failed to rebut these legitimate reasons with any evidence showing a gender-based differential.  As such, Defendant is entitled to summary judgment on Plaintiff's claim under the EPA.

## IV.   CONCLUSION

For the foregoing reasons, Defendant Gestamp Alabama, LLC is entitled to judgment as a matter of law on all the claims asserted in Plaintiff's Amended Complaint.  As such, Defendant's motion for summary judgment (Doc. 39) is due to be granted.  A separate order will be entered.

**DATED** this 19th day of July, 2018.

_John E. Ott_

**JOHN E. OTT**
Chief United States Magistrate Judge